IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AXLE OF DEARBORN, INC. D/B/A DETROIT AXLE,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*; DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, *in his official capacity as Acting Commissioner for U.S. Customs and Border Protection*; and the UNITED STATES,<br><br>*Defendants*. | Case No. 1:25-cv-00091 |

**DETROIT AXLE'S RESPONSE IN OPPOSITION
TO THE GOVERNMENT'S MOTION FOR A STAY**

This Court should deny the government's request to stay proceedings in this case pending resolution of the government's motion for a stay pending appeal in *V.O.S. Selections, Inc. v. Trump*, 1:25-cv-00066 (C.I.T.), and *Oregon v. Trump*, 1:25-cv-00077 (C.I.T.), and instead should enter the parties' heretofore stipulated briefing schedule, *see* ECF 10. The government's motion should be denied for two reasons. *First*, granting the stay would mean the government wins this case: If Detroit Axle does not obtain relief from this Court by the end of June, it likely will be forced to shutter most or all of its business and lay off hundreds of employees. This imminent irreparable injury was the motivation for the expedited briefing schedule on Detroit Axle's pending

1

motion for a preliminary injunction and partial summary judgment—a schedule to which the government agreed. The government should not be allowed to renege on its agreement and effectively win the case through delay. *Second*, a stay is unwarranted for the additional reason that Detroit Axle is seeking a preliminary injunction on independent grounds that can and should be adjudicated *regardless* of the outcome of the appeals in *V.O.S.* and *Oregon*. A stay that overrides the stipulated briefing schedule and freezes all proceedings in this case is unnecessary and would mean the end of Detroit Axle.

On May 16, Detroit Axle filed a complaint in this Court raising four grounds for relief. Counts I and II challenge the purported elimination of the de minimis exemption as exceeding the Executive Branch's statutory and constitutional authority and as arbitrary and capricious. ECF 2 at 28-31. Counts III and IV challenge certain of the IEEPA tariffs based on the President's lack of authority to impose tariffs under IEEPA and the arbitrary and capricious nature of those tariffs. *Id.* at 32-33. Detroit Axle promptly sought a preliminary injunction and expedited partial summary judgment only on Counts I and II—the counts challenging the revocation of the de minimis exemption—because the continued availability of the de minimis exemption is crucial to the company's survival in the near term. ECF 9.

As explained in Detroit Axle's motion and the accompanying declaration, Detroit Axle urgently needs relief. The elimination of the de minimis exemption is causing the company severe and irreparable harm by forcing it to pay 72.5% tariffs on shipments of Chinese goods from its Mexico facility to consumers in the United States—shipments that should be completely protected from tariffs by the exemption. Detroit Axle can neither absorb the massively increased costs imposed by the tariffs nor pass on those costs through higher prices to its cost-conscious customers.

It is currently fulfilling customer orders using stockpiled, pre-tariff inventory that will be exhausted by late June; without relief, Detroit Axle likely will be forced to close its Michigan facilities and lay off hundreds of workers by the end of June. *See* ECF 9 at 25–29. Given its urgent need for relief, Detroit Axle sought—and the government consented to—an expedited briefing schedule that would conclude on June 9. ECF 10. Detroit Axle also requested an expedited hearing and decision. *Id.*

Despite having agreed to an expedited briefing schedule, the government now argues that this Court should stay proceedings pending resolution of the government's motion for a stay pending appeal in the *V.O.S. Selections* and *Oregon* cases. ECF 13.

This Court should deny that motion because such a stay would effectively grant the government victory on the merits by depriving Detroit Axle of the expeditious relief that is the goal of its lawsuit. Absent restoration of de minimis treatment for its imports within the next several weeks, Detroit Axle likely will be forced to shut down its Michigan operations and wind down its business. A stay of this case while the government litigates *V.O.S.* and *Oregon* in the Federal Circuit (and potentially the Supreme Court thereafter) is likely to prevent Detroit Axle from obtaining any relief for weeks, if not months. Briefing in the Federal Circuit is not scheduled to conclude until June 9, *see* Order, *V.O.S. Selections, Inc. v. Trump*, 25-1812, ECF 7 (Fed. Cir. May 29, 2025), and it could take weeks or months for the stay request to be decided by the Federal Circuit and, if necessary, the Supreme Court. Detroit Axle and its hundreds of employees cannot wait that long.

Contrary to the government's argument, the pendency of the appeals in *V.O.S.* and *Oregon* provides *more* reason for the Court to expeditiously adjudicate Counts I and II of Detroit Axle's

complaint, not less. Detroit Axle agrees with the government that the decision in *V.O.S.* and *Oregon* has the effect of reinstating the de minimis exemption, because the decision vacates and enjoins the "Trafficking Tariffs"—including the order revoking de minimis treatment of Chinese goods (Executive Order 14256). *See V.O.S.*, Slip Op. at 13, 48; ECF 13 at 4. But that order is now subject to an administrative stay and could be vacated on appeal. In the meantime, Detroit Axle continues to suffer serious and irreparable harm, and it has independent arguments for vacating and enjoining the revocation of the de minimis exemption that, if vindicated by this Court, would entitle Detroit Axle to relief regardless of the ultimate outcome of *V.O.S.* and *Oregon*.

In particular, Detroit Axle has argued that the Executive Branch's elimination of the de minimis exemption contravenes the limitations Congress imposed in 19 U.S.C. § 1321—which creates a mandatory $800 floor for the exemption and requires any exceptions to be created through notice-and-comment rulemaking—and is arbitrary and capricious under the APA. These grounds for vacating and enjoining the Executive Branch's elimination of the exemption are separate and independent from the holding of *V.O.S.* and *Oregon* that the Trafficking Tariffs do not "deal with" any emergency under IEEPA. Thus, even if the decision in *V.O.S.* and *Oregon* is ultimately reversed, Section 1321 and the APA would *still* bar the Executive Branch from rescinding the de minimis exemption. The plaintiffs in *V.O.S.* and *Oregon* did not press these claims, and the Court did not pass upon them. Detroit Axle is entitled to adjudication of these independent claims, and a ruling for Detroit Axle on that basis would give it the relief it requires to avoid the destruction of its business regardless of how *V.O.S.* and *Oregon* are ultimately decided on appeal.

The government argues that a stay is appropriate here because courts sometimes grant stays when a decision in another case may narrow the issues before the court. *See* ECF 13 at 7-8. But as the government's lead authority explains, "[o]nly in rare circumstances will a litigant in one

cause be compelled to stand aside" to await resolution of another case. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). And where, as here, "there is even a fair possibility that the stay … will work damage to some one else," the party seeking a stay must "make out a clear case of hardship or inequity in being required to go forward." *Id.* The government has made no effort to make that showing and could not do so.

The cases the government cites (at 7-8) involved stays where there was no clear showing of irreparable harm to the non-moving party. *See Diamond Sawblades Mfrs' Coal. v. United States*, 34 CIT 404, 407 (2010) ("[T]he degree and likelihood of the negative impact is speculative."); *RHI Refractories Liaoning Co. v. United States*, 774 F. Supp. 2d 1280, 1285 (Ct. Int'l Trade 2011) ("Defendant and Defendant–Intervenor have not stated that they will suffer harm as a result of a stay."); *NTN Bearing Corp. of Am. v. United States*, 36 CIT 846, 848 (2012) ("[T]he court fails to see what harm would accrue to defendant should the stay be ordered. In opposing the motion, defendant fails to identify any such harm."); *Deacero S.A.P.I. de C.V. v. United States*, 2015 WL 4909618, at *9 (Ct. Int'l Trade 2015) ("[T]he United States has not itself explained why it opposes a stay or asserted that there is a 'fair possibility' that a stay would damage its interests."). Here, by contrast, it is a virtual certainty that a stay would work significant irreparable injury to Detroit Axle: A stay threatens to drive Detroit Axle out of business and will certainly work continued unrecoverable damage to its sales, customer relationships, and goodwill.

The government makes no attempt to refute Detroit Axle's showing that, without relief, the company likely will need to lay off hundreds of employees by the end of June. Instead, the government argues that Detroit Axle must not be suffering irreparable injury because it waited until May 16 to challenge the elimination of the de minimis exemption. But the elimination was not effective until May 2, *see* Exec. Order 14256, and it was eminently reasonable for the company

5

to wait a couple of weeks before incurring the major expense of a lawsuit in case the Executive reversed course, as has repeatedly happened over the last few months. Nothing about this timeline undermines Detroit Axle's severe irreparable harm. The government also argues (at 6-7) that Detroit Axle will not suffer irreparable harm because it can recover unlawfully collected tariffs once it prevails. But the promise of a future refund is not a "meaningful" remedy if Detroit Axle goes out of business and lays off its employees in the meantime. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011).

This Court therefore should deny the government's stay motion and should instead expeditiously consider Detroit Axle's motion for preliminary injunction and partial summary judgment on the schedule set forth in Detroit Axle's motion for expedited briefing and hearing schedule (ECF 10): Detroit Axle and the government agreed that the government's response should be due June 4 and Detroit Axle's reply due June 9—and Detroit Axle respectfully requests that the Court hold a hearing June 10, 11, 16, 17 or at the Court's earliest convenience, and that the Court rule before June 27. The Court also should deny the government's request to grant it a 10-day extension on its response brief in the event the Court denies the government's stay motion. Detroit Axle's irreparable injuries will continue to compound during such a delay, and a 10-day extension would push the completion of briefing to the second half of June—at which point Detroit Axle's business will be dangerously close to destruction. Moreover, the government consented to the proposed briefing schedule with awareness of the pendency of *V.O.S.* and *Oregon* and the distinct nature of the claims Detroit Axle planned to raise, so no extension is warranted.

May 30, 2025                                                   Respectfully submitted,

                                                                                  */s/ Thomas H. Dupree Jr.*

                                          Thomas H. Dupree Jr.
                                          Samantha Sewall
                                          Nick Harper
                                          Connor P. Mui
                                          Luke J.P. Wearden
                                          GIBSON, DUNN & CRUTCHER LLP
                                          1700 M Street, N.W.
                                          Washington, D.C. 20036-4504
                                          (202) 955-8500
                                          TDupree@gibsondunn.com
                                          SSewall@gibsondunn.com
                                          NHarper@gibsondunn.com
                                          CMui@gibsondunn.com
                                          LWearden@gibsondunn.com

                                          *Counsel for Plaintiff Detroit Axle*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

Pursuant to CIT Standard Chambers Procedure 2(B), I certify that this brief, including headings, footnotes, and quotations (but excluding signature blocks and this certificate) contains 1,775 words.

/s/ *Thomas H. Dupree Jr.*

*Counsel for Plaintiff Detroit Axle*