# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AXLE OF DEARBORN, INC. D/B/A DETROIT AXLE,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*; DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, *in his official capacity as Acting Commissioner for U.S. Customs and Border Protection*; and the UNITED STATES,<br><br>*Defendants.* | Case No. 1:25-cv-00091 |

**PLAINTIFF DETROIT AXLE'S
MOTION TO DISSOLVE THE STAY AND
RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 6

    I.    The Court Should Dissolve The Stay And Allow Detroit Axle To Seek Prompt Relief Against The Recently Issued Global De Minimis Executive Order. .......... 6

    II.    Detroit Axle Is Entitled To Partial Summary Judgment On Counts I And II Of Its Amended Complaint. ..................................................................................... 7

        A.    The Rescission Of The De Minimis Exemption Exceeds The Executive's Authority. ................................................................................. 8

        B.    The Agency Actions Eliminating The De Minimis Exemption Were Arbitrary And Capricious. ...................................................................... 10

    III.    Detroit Axle Is Entitled To Vacatur And A Permanent, Party-Specific Injunction. ........................................................................................................ 11

CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
  594 U.S. 758 (2021)..................................................................................................8

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001)...............................................................................12

*Am. Signature, Inc. v. United States*,
  598 F.3d 816 (Fed. Cir. 2010).................................................................................14

*Biden v. Nebraska*,
  600 U.S. 477 (2023)..................................................................................................9

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012).................................................................................14

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)................................................................................................12

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................................12

*Hawaii v. Trump*,
  859 F.3d 741 (9th Cir. 2017), *vacated as moot*, 583 U.S. 941 ................................11

*KPMG LLP v. United States*,
  139 Fed. Cl. 533 (2018)...........................................................................................13

*Nebraska v. Su*,
  121 F.4th 1 (9th Cir. 2024) .....................................................................................10

*Ohio v. Env't Prot. Agency*,
  603 U.S. 279 (2024)................................................................................................11

*In re Section 301 Cases*,
  524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) ..........................................................13

*V.O.S. Selections, Inc. v. Trump*,
  2025 WL 2490634 (Fed. Cir. Aug. 29, 2025)..................................................2, 5, 8

**Statutes**

5 U.S.C. § 706.........................................................................................2, 10, 11, 12

# TABLE OF AUTHORITIES
(*continued*)

Page(s)

19 U.S.C. § 1321 .................................................................................................2, 5, 8, 10

28 U.S.C. §§ 2643–2644 ......................................................................................13

Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025) ..................................................3, 9, 10

**Regulations**

90 Fed. Reg. 17,608 (Apr. 28, 2025) ...................................................................5, 12

90 Fed. Reg. 42,418 (Sept. 2, 2025) ....................................................................5, 6, 12

**Other Authorities**

Exec. Order 14324, 90 Fed. Reg. 37,775 (July 30, 2025) ...................................4, 6, 7, 9, 11

White House, *Fact Sheet: President Donald J. Trump is Protecting the United States' National Security and Economy by Suspending the De Minimis Exemption for Commercial Shipments Globally* (July 20, 2025), https://tinyurl.com/2t82th82 ..............................................4, 9

## INTRODUCTION

On July 28, 2025, this Court stayed this case pending resolution of the appeals in *V.O.S. Selections, Inc. v. United States*, No. 25-00066, and *Oregon v. United States*, No. 25-00077, not because Detroit Axle failed to prove a likelihood of success on the merits, but because the "injunction this court issued in V.O.S. encompasses the Trafficking [Executive] Orders implicating the de minimis exemption at issue here." ECF 38 at 2. Due to the overlap, the injunction this Court granted in *V.O.S.*, if ultimately affirmed on appeal, also would have provided Detroit Axle complete relief.

That is no longer the case. The President recently issued a new executive order that rescinds the de minimis exemption globally (the "Global De Minimis Order"). The new order provides that the global rescission will remain in force regardless of whether the prior executive orders imposing tariffs under IEEPA are held unlawful. On August 29, the Global De Minimis Order went into effect and superseded the prior executive orders rescinding the de minimis exemption solely for Chinese imports. On September 2, U.S. Customs and Border Protection published in the Federal Register a formal notice implementing the Global De Minimis Order. Detroit Axle now has moved to amend its complaint to challenge the Global De Minimis Order and its implementing agency actions.

The Global De Minimis Order eliminates the basis for the Court's stay in this case. Neither that order nor its implementing agency actions have been challenged in *V.O.S* or *Oregon* (hereinafter, "*V.O.S.*"), so any injunction issued in *V.O.S.* is highly unlikely to extend to the order and provide Detroit Axle complete relief. Yet the Global De Minimis Order is irreparably harming Detroit Axle and is unlawful for the same reasons that the prior executive orders and agency actions were unlawful. Indeed, the Federal Circuit's affirmance of this Court's core holding in *V.O.S.* confirms that the President cannot use IEEPA as a blank check to rewrite tariff statutes like the de

1

minimis exemption. *See V.O.S. Selections, Inc. v. Trump*, 2025 WL 2490634, at *10–16 (Fed. Cir. Aug. 29, 2025). Thus, Detroit Axle is entitled to prompt, independent relief against the Global De Minimis Order and the agency actions eliminating the de minimis exemption that will remedy Detroit Axle's harm and prevent future injury. This Court should dissolve the stay and grant partial summary judgment to Detroit Axle.

## BACKGROUND

On May 16, Detroit Axle filed a four-count complaint challenging the government's elimination, through executive orders and agency actions, of the de minimis exemption for imports from China. ECF 2. Count I alleged that the elimination of the de minimis exemption exceeds the Executive Branch's statutory and constitutional authority. The statute creating the exemption, 19 U.S.C. § 1321, establishes a comprehensive and exclusive scheme for altering the de minimis exemption by specifying that the exemption can be changed only through notice-and-comment rulemaking by the Secretary of the Treasury; IEEPA does not (and cannot, consistent with the Constitution) authorize the President to circumvent that scheme. ECF 2 at 14–18, 28–30. Count II alleged that the agency actions implementing the elimination of the de minimis exemption were arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C), because they failed to account for significant reliance interests and failed to consider the costs of eliminating the de minimis exemption as well as obvious, reasonable alternatives that would combat drug trafficking. ECF 2 at 19–22, 30–31. Count III alleged that the IEEPA tariffs applicable to Detroit Axle's imports exceed the President's statutory and constitutional authority, while Count IV asserted that the agency actions implementing those tariffs were arbitrary and capricious. *Id.* at 22–28, 32–33.

2

Detroit Axle's business model relies on the company's ability to ship some of its products tariff-free to customers in the United States, so the elimination of the de minimis exemption seriously threatens the company's profitability, reputation, and operating model. On May 21, Detroit Axle moved for a preliminary injunction and partial summary judgment on Counts I and II—the counts challenging the government's rescission of the de minimis exemption—and sought an expedited hearing. ECF 9. On June 20, the government filed its brief in opposition, and also moved for summary judgment on Count III. ECF 21. Detroit Axle replied on June 26 (11 days before the deadline) and renewed its request for an expedited hearing. ECF 29, 30. On July 2, the Court set argument for July 10 and stayed Counts III and IV pending disposition of the appeals in *V.O.S.* and *Oregon*. ECF 31.

On July 4, the President signed into law the One Big Beautiful Bill Act, which amended Section 1321. *See* Pub. L. No. 119-21, 139 Stat. 72 (July 4, 2025). Although Congress opted to repeal the de minimis exemption for imports less than $800, Congress did not make that change effective until July 1, 2027, thereby giving businesses notice and time to adjust. *See id.* § 70531(b), 139 Stat. 283. The Act did not ratify the Executive's decision to revoke the de minimis exemption immediately nor grant the Executive any additional authority to alter the exemption on its own initiative.

This Court held argument on July 10. *See* ECF 36. On July 28, the Court issued an order and opinion denying Detroit Axle's motion for a preliminary injunction and staying the remainder of the case, including the motions for summary judgment on Counts I, II, and III, pending the final resolution of *V.O.S.* ECF 38. The Court did not reject Detroit Axle's merits arguments or find that Detroit Axle was not suffering irreparable harm. Instead, the Court reasoned that the "injunction this court issued in V.O.S. encompasses the Trafficking [Executive] Orders implicating the

3

de minimis exemption at issue here." ECF 38 at 2.  Because that injunction, if ultimately affirmed on appeal, would "grant[] all the relief that Axle" sought and be "redundant," the Court stayed this case even though Detroit Axle's challenge "would provide a separate basis upon which Axle could seek relief should the appellate courts come to a different result in V.O.S." ECF 38 at 3–4.

On July 30, the President issued Executive Order 14324 (the "Global De Minimis Order"), which went into effect on August 29.  90 Fed. Reg. 37,775.  The Global De Minimis Order purports to rescind the de minimis exemption "on a global basis"—*two years before* Congress decided to end the exemption in the One Big Beautiful Bill Act—and to supersede Executive Order 14256's China-specific de minimis rescission.  *See* Exec. Order 14324, §§ 1, 4, 90 Fed. Reg. 37,775, 37,777–78 (July 30, 2025).  According to the White House, the worldwide recission of the de minimis exemption "delivers on [the President's] promise to 'put an end' to the 'big scam' of de minimis shipments."  White House, *Fact Sheet: President Donald J. Trump is Protecting the United States' National Security and Economy by Suspending the De Minimis Exemption for Commercial Shipments Globally* (July 30, 2025), https://tinyurl.com/2t82th82.

The Global De Minimis Order does not provide new justifications for rescinding the de minimis exemption with respect to China.  Rather, it merely states that rescinding the exemption for low-value imports from China is "still necessary and appropriate" and that "[t]he risks of evasion, deception, and illicit-drug importation are particularly high for low-value articles."  Exec. Order 14324, § 1, 90 Fed. Reg. at 37,777.  The order also provides that the global recission of the de minimis exemption is severable from the President's other executive orders imposing tariffs and should remain in effect regardless of the outcome of the tariff litigation.  *See id.* § 6(b)(i), 90 Fed. Reg. at 37,779.

4

On August 29, Customs and Border Protection implemented the Global De Minimis Order by issuing a notice purporting to modify the Harmonized Tariff Schedule of the United States (HTSUS) to eliminate the de minimis exemption globally. *See* Notice of Implementation of the President's Executive Order 14324, Suspending Duty-Free De Minimis Treatment for All Countries, 90 Fed. Reg. 42,418, 42,419–21 (published Sept. 2, 2025). The notice provides that "[c]onsistent with Executive Order 14324, the duty-free *de minimis* exemption provided under 19 U.S.C. § 1321(a)(2)(C) shall no longer apply to any shipment of articles not covered by 50 U.S.C. 1702(b), regardless of value, country of origin, mode of transportation, or method of entry." *Id.* at 42,419. The notice also purports to suspend all existing regulations providing de minimis treatment for imports. *Id.* at 42,420. And it "supersede[s]" the earlier Customs and Border Protection notice eliminating the de minimis exemption just for products of China. *Id.* (superseding 90 Fed. Reg. 17,608 (Apr. 28, 2025) for goods imported after August 29, 2025).

Also on August 29, the Federal Circuit affirmed this Court's holding that the President's "Trafficking and Reciprocal Tariffs . . . exceed the authority delegated to the President by IEEPA's text" and thus are "invalid and contrary to law." *V.O.S.*, 2025 WL 2490634, at *18 (quotation marks omitted). The Federal Circuit also vacated this Court's permanent injunction and remanded for reevaluation of the proper scope of relief. *Id.*

In light of the Global De Minimis Order and the new Customs and Border Protection notice rescinding the de minimis exemption worldwide, Detroit Axle has moved for leave to amend its complaint to incorporate the Global De Minimis Order and its implementing agency actions, and to update the factual allegations in the original complaint. ECF 39; *see id.* Ex. A. And Detroit Axle now moves to dissolve the stay and renews its motion for partial summary judgment on Count

5

I and Count II of the amended complaint (solely with respect to the Global De Minimis Order and the CBP notices that have purported to rescind the exemption).

## ARGUMENT

I. **The Court Should Dissolve The Stay And Allow Detroit Axle To Seek Prompt Relief Against The Recently Issued Global De Minimis Order.**

The Court should dissolve the stay in this case because Detroit Axle is now being harmed by an executive order and implementing agency actions that are not being challenged in *V.O.S.* This Court's July 28 stay order denied Detroit Axle preliminary relief and stayed the remainder of this case because the "injunction this court issued in V.O.S. encompasses the Trafficking Orders implicating the de minimis exemption at issue here." ECF 38 at 3. Because those trafficking orders also purported to eliminate the de minimis exemption for Chinese imports, the Court concluded that separate relief for Detroit Axle enjoining the de minimis aspects of the trafficking orders would be "redundant." *Id.* at 4.

But after this Court's stay decision, the President issued the Global De Minimis Order, which purports to eliminate the de minimis exemption globally and supersedes the portions of the trafficking orders that rescinded the de minimis exemption only for Chinese imports. Exec. Order 14324, §§ 1, 4, 90 Fed. Reg. at 37,777–78. The Global De Minimis Order went into effect on August 29 and has now been implemented by a new notice issued by Customs and Border Protection. *See* 90 Fed. Reg. 42,418. The new order and its implementing notice are irreparably harming Detroit Axle's business by subjecting previously de-minimis-eligible imports from its Mexico facility to crushing 72.5% tariffs.

Granting Detroit Axle relief against the Global De Minimis Order would not be "redundant" with any relief that is likely to be granted in *V.O.S.* ECF 38 at 4. The Global De Minimis Order is not being challenged in *V.O.S.*; indeed, it was issued *after* this Court's decision in *V.O.S.*,

6

and the plaintiffs in *V.O.S.* have not amended their complaint to challenge it. Nor is the order likely to be challenged in *V.O.S.* going forward, because that litigation is focused on the legality of the IEEPA tariffs, not the rescission of the de minimis exemption. The government, moreover, has indicated that it will seek to enforce the Global De Minimis Order no matter what happens in *V.O.S.*: The Global De Minimis Order contains a provision stating that it is severable from other executive orders imposing tariffs and should remain in effect regardless of the outcome of the tariff litigation. *See* Exec. Order 14324, § 6(b)(i), 90 Fed. Reg. at 37,779 (providing that the suspension of "duty-free *de minimis* treatment, as detailed in this order, shall not be affected" even if the tariffs "are held to be invalid").

Because any relief granted in *V.O.S.* almost certainly will not reach the Global De Minimis Order and therefore will not provide Detroit Axle complete relief, there is no sound basis for maintaining the stay in this case pending resolution of *V.O.S.* Instead, the Court should dissolve the stay, grant Detroit Axle's separate motion for leave to amend its complaint to challenge the Global De Minimis Order, and grant Detroit Axle partial summary judgment with respect to the de-minimis-related Counts I and II of its amended complaint for the reasons explained in prior briefing, at the summary judgment hearing, and reiterated below.

## II. Detroit Axle Is Entitled To Partial Summary Judgment On Counts I And II Of Its Amended Complaint.

The Executive Branch's elimination of the de minimis exemption—first for products of China, and now for all imports from every country in the world—is unlawful for two independent reasons: It exceeds the Executive's statutory and constitutional authority, and the agency actions implementing the rescission were arbitrary and capricious in violation of the Administrative Procedure Act.

## A. The Rescission Of The De Minimis Exemption Exceeds The Executive's Authority.

As Detroit Axle has explained in prior briefing and argument, the executive orders and agency actions rescinding the de minimis exemption, now including the Global De Minimis Order and its implementing agency actions, exceed the Executive's statutory and constitutional authority. *See* ECF 9, 29. In short, 19 U.S.C. § 1321 is a comprehensive and exclusive scheme creating and governing the de minimis exemption. That scheme *requires* duty-free entry for low-value imports and provides the exclusive means—notice-and-comment rulemaking by the Secretary of the Treasury—for the Executive to create exceptions to the exemption, and only for statutorily specified reasons. *See* ECF 9 at 14–19; ECF 29 at 3–8. IEEPA does not authorize the Executive to rewrite and "override" Section 1321's carefully calibrated scheme, as the government has argued (ECF 28 at 13, 20), because: (i) IEEPA does not authorize the President to impose tariffs or eliminate statutory tariff exemptions, and it would be unconstitutional if it did, *see* ECF 9 at 20–21; ECF 29 at 8–11, 16–17, and (ii) even if IEEPA's general language purported to authorize the President to suspend the exemption, Section 1321's prohibition of other means of altering the exemption is controlling because Section 1321 is the more specific statute governing the exemption, *see* ECF 9 at 19–20, ECF 29 at 11–15.

The Federal Circuit's recent decision in *V.O.S.* confirms that IEEPA does not grant the President the "unbounded" power to rewrite tariff exemptions for any (and every) country, for however long he likes. 2025 WL 2490634, at *17. In affirming this Court's decision, the Federal Circuit reasoned that IEEPA's general language is "a wafer-thin reed on which to rest such sweeping power." *V.O.S.*, 2025 WL 2490634, at *15 (quoting *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021)). "However broad" IEEPA's language, the Federal

Circuit explained, it "cannot authorize the kind of exhaustive rewriting of the statute that has taken place here." *Id.* (quoting *Biden v. Nebraska*, 600 U.S. 477, 500 (2023)).

The same conclusion applies to the breathtaking authority the government is claiming in this case to rewrite and "override" statutory tariff exemptions like the de minimis exemption. ECF 28 at 13, 20. And it applies with special force to the Global De Minimis order. The government argued in its prior briefs in this case that the China-specific de minimis rescission did not completely nullify the de minimis exemption because the "exemption still applies for non-PRC goods and is merely suspended for PRC goods." ECF 28 at 34. And the government asserted at oral argument in this case that the de minimis rescission is distinguishable from the IEEPA tariffs at issue in *V.O.S.* because "the action [here] is much narrower. We're talking here about an action with respect to a single country." ECF 37 (Tr. of Oral Argument) at 21.

The Global De Minimis Order refutes those arguments. That order purports to indefinitely eliminate the exemption on a "*global*" basis." Exec. Order 14324, § 1, 90 Fed. Reg. at 37,777 (emphasis added). And although the order is styled as a "suspension," it contains no time limit, and the White House described the order as "deliver[ing] on [the President's] promise to '*put an end*' to the 'big scam' of de minimis shipments." *Fact Sheet*, *supra* (emphasis added).

Even worse, the Global De Minimis Order purports to eliminate the de minimis exemption *now* despite Congress's recent, clear command that the exemption should remain in place until July 2027. *See* Pub. L. No. 119-21, § 70531(b), 139 Stat. 283. In issuing the order, the White House explained that "President Trump is acting more quickly to suspend the *de minimis* exemption" relative to the timeline set forth in the One Big Beautiful Bill Act, because the President (unlike Congress) believes that doing so is necessary "NOW." *Fact Sheet*, *supra*. So the Global De Minimis Order contravenes *two* congressional judgments: that Executive Branch changes to

9

the exemption must proceed via notice-and-comment rulemaking by the Secretary of the Treasury, *see* 19 U.S.C. § 1321(b), and that the exemption should remain in place for two years, *see* Pub. L. No. 119-21, § 70531(b), 139 Stat. 283.

The President's global rescission of the de minimis exemption thus lays bare the staggeringly broad authority the government is asserting to erase federal statutes, like Section 1321, using IEEPA. The global rescission of the de minimis exemption, like the China-specific rescission, exceeds the Executive's authority, and its enforcement should be enjoined.

### B. The Agency Actions Eliminating The De Minimis Exemption Were Arbitrary And Capricious.

The agency actions implementing the President's executive orders should also be set aside for the independent reason that they were arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

As Detroit Axle has explained, the Executive Branch utterly failed to consider the serious reliance interests that the de minimis exemption created, the significant costs to U.S. consumers and businesses of eliminating the exemption, and obvious, reasonable alternatives, like inspecting low-value packages without levying tariffs on them. *See* ECF 9 at 23–25; ECF 29 at 17. The government has never tried to defend these actions on the merits—instead, it has argued only that these actions are not subject to review because they were merely "ministerial actions" that implemented the President's executive orders. ECF 28 at 16. But the APA "'applies to *any* final agency action'"; there is no "ministerial actions" exemption to APA review. ECF 29 at 18 (quoting *Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024) (quotation marks omitted; emphasis added)).

The government now has issued the Global De Minimis Order as well as new final agency action implementing that order. But the government *still* has not meaningfully explained its actions or considered the obvious reliance interests at stake, economic costs of eliminating the exemption, or reasonable alternatives. Nor has the government explained why it could not have

10

conducted notice-and-comment rulemaking to obtain public input on these issues before taking such drastic action. The Global De Minimis Order simply reiterated the government's claim that eliminating the exemption is necessary to stop drug trafficking. *See* Exec. Order 14324, § 1, 90 Fed. Reg. at 37,775–77. And the new notice implementing the order does nothing more than parrot earlier Executive Branch conclusions about drug trafficking. *See* 90 Fed. Reg. at 42,418–19. The government's elimination of the de minimis exemption—worldwide, with no time limit, and two years before Congress chose to end the exemption—therefore remains neither "reasonable" nor "reasonably explained." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (quotation marks omitted).

### III.  Detroit Axle Is Entitled To Vacatur And A Permanent, Party-Specific Injunction.

Detroit Axle therefore is entitled to prompt, standalone relief: vacatur of the agency actions eliminating the de minimis exemption and an order declaring unlawful and permanently enjoining enforcement of the Global De Minimis Order as to Detroit Axle. *See, e.g.*, *Hawaii v. Trump*, 859 F.3d 741, 760 (9th Cir. 2017) (affirming an injunction entered after plaintiffs filed an amended complaint challenging superseding executive order), *vacated as moot*, 583 U.S. 941 (holding injunction moot only because superseding order had "expired").

*First*, the APA entitles Detroit Axle to vacatur of all agency actions implementing the Global De Minimis Order (and any prior executive orders eliminating the de minimis exemption) because those actions lack statutory authority and are arbitrary or capricious. 5 U.S.C. § 706(2)(A), (C). Those actions include the Customs and Border Protection notices implementing the Global De Minimis Order and prior executive orders rescinding the de minimis exemption for

11

Chinese imports. *See* 90 Fed. Reg. 42,418 (Sept. 2, 2025); 90 Fed. Reg. 17,608 (Apr. 28, 2025).[1] Detroit Axle need not establish irreparable harm to obtain vacatur of those actions. *See* 5 U.S.C. § 706 (the reviewing court "*shall* . . . hold unlawful and set aside agency action" that is arbitrary, capricious, or in excess of statutory authority (emphasis added)); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("[W]hether or not appellant has suffered irreparable injury, if it makes out its case under the APA it is entitled to a remedy."). And this vacatur remedy is entirely separate from the *V.O.S.* injunction, which did not (and likely will not) set aside under the APA the agency actions eliminating the de minimis exemption because the plaintiffs in those cases have not challenged those actions. This Court therefore has a responsibility under the APA to "hold unlawful and set aside" those agency actions because they are "arbitrary, capricious," and "in excess of statutory . . . authority" and "limitations." 5 U.S.C. § 706(2); *cf. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

*Second*, in addition to vacatur, a party-specific permanent injunction is warranted here because in addition to being unlawful, the Global De Minimis Order, like the earlier orders eliminating the de minimis exemption, is inflicting irreparable injuries on Detroit Axle for which it has no adequate remedy at law. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Most notably, Detroit Axle has been forced to pay massive tariffs for shipments to customers from its

---

[1] The earlier Customs and Border Protection notice that rescinded the de minimis exemption for Chinese products remains in effect for goods imported before August 29, 2025. *See* 90 Fed. Reg. at 42,420 (the "Federal Register notice found at 90 FR 17608 (Apr. 28, 2025) will remain in effect with respect to covered goods entered for consumption . . . before 12:01 a.m. eastern daylight time on August 29, 2025"). Detroit Axle has standing to seek vacatur of the earlier notice, 90 Fed. Reg. 17,608, because that notice effectuated the rescission of the de minimis exemption for Chinese products, which injured Detroit Axle, and vacating that notice would entitle Detroit Axle to a refund of tariffs that the notice unlawfully caused to be collected.

Mexico facility that it otherwise would have shipped tariff-free under the de minimis exemption. Musheinesh Third Decl. ¶ 4. The company has paid more than $19 million in tariffs on these shipments between May 2 and September 3, 2025, compared to $0 last year. *Id.* True, the government has represented that it intends to "refund . . . duties paid that would otherwise be eligible for duty-free treatment under the *de minimis* exemption." ECF 28 at 42 (citing 28 U.S.C. §§ 2643–44). But it is unclear whether the government will refund all duties Detroit Axle has paid on products that the company would have shipped tariff-free had the exemption been available. *See* ECF 27 at 38–40 (arguing that Detroit Axle would only be eligible for tariff-free imports of $800 per day, without accounting for the fact that $800 in shipments *per customer* previously were tariff-free). If Detroit Axle cannot obtain a refund for duties it paid on shipments for which it was forced by the de minimis rescission to pay tariffs, then the company's millions of dollars in additional tariff costs are irreparable injuries. *Cf. In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1362–63 (Ct. Int'l Trade 2021) (noting "irreparable harm unless an importer can obtain refunds or reliquidation" to recover "unlawful exactions").

Detroit Axle also is facing other irreparable injuries. The company has been forced to raise its prices to account for the massively increased costs that it is facing due to the elimination of the de minimis exemption. *See* Musheinesh Third Decl. ¶ 7. As a result, Detroit Axle has lost sales that it otherwise would have realized. *See id.* The company likely has no way to recover damages for these lost business opportunities because of the government's sovereign immunity. *See, e.g.*, *KPMG LLP v. United States*, 139 Fed. Cl. 533, 537 (2018) ("As a general principle, where plaintiff has no ability to recoup lost profits against the United States, the harm to the plaintiff is irreparable."). Moreover, the price increases necessitated by the government's actions have harmed Detroit Axle's reputation for providing high-quality auto parts at low prices. *See* Musheinesh Third

13

Decl. ¶ 7; *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."). On the other side of the equitable equation, the government has no interest in enforcing unlawful executive actions. *See Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010) ("The public interest is served by ensuring that governmental bodies comply with the law."). And it has offered no reason why it cannot inspect low-value shipments to stop drug trafficking without levying tariffs on them.

Detroit Axle therefore is also entitled to a permanent, party-specific injunction protecting it from the government's unlawful elimination of the de minimis exemption. In order to provide Detroit Axle any meaningful relief, that injunction must prevent the government from collecting tariffs on de-minimis-eligible imports for which Detroit Axle is the importer of record and from collecting tariffs on de-minimis-eligible shipments that Detroit Axle makes from outside the United States to individual U.S. customers.

## CONCLUSION

This Court should dissolve the stay and grant Detroit Axle summary judgment on Counts I and II. The Court should hold unlawful and set aside all the agency actions that have purported to eliminate the de minimis exemption. And the Court should enter a permanent injunction enjoining Defendants from enforcing Executive Order 14324 against Detroit Axle.

September 5, 2025                           Respectfully submitted,

/s/ Thomas H. Dupree Jr.

Thomas H. Dupree Jr.
Samantha Sewall
Nick Harper
Connor P. Mui
Luke J.P. Wearden
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
TDupree@gibsondunn.com
SSewall@gibsondunn.com
NHarper@gibsondunn.com
CMui@gibsondunn.com
LWearden@gibsondunn.com

*Counsel for Plaintiff Detroit Axle*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

Pursuant to CIT Standard Chambers Procedure 2(B), I certify that this brief, including headings, footnotes, and quotations (but excluding the table of contents, table of authorities, signature blocks, and this certificate) contains 4,489 words.

/s/ *Thomas H. Dupree Jr.*

*Counsel for Plaintiff Detroit Axle*