IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AXLE OF DEARBORN, INC. d/b/a DETROIT AXLE,<br><br>*Plaintiff,*<br><br>v.<br><br>DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*; DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, *in his official capacity as Acting Commissioner for U.S. Customs and Border Protection*; and the UNITED STATES,<br><br>*Defendants.* | Case No. 1:25-cv-00091 |

**DETROIT AXLE'S REPLY IN SUPPORT OF
MOTION TO DISSOLVE THE STAY**

The government offers no sound basis to maintain the stay of this litigation while the new Global De Minimis Order—which is not at issue in *V.O.S.*—inflicts irreparable harm on Detroit Axle. The government nowhere disputes: (1) that the Global De Minimis Order will not be enjoined by the Supreme Court in *V.O.S.*; (2) that the government will continue to enforce the Global De Minimis Order regardless of the outcome in *V.O.S.*; and (3) that the Global De Minimis Order is irreparably injuring Detroit Axle by preventing it from shipping low-value goods duty-free. The government nevertheless argues that the stay remains appropriate because the issues here overlap with the issues in *V.O.S.* But this Court did not stay the case because of overlapping legal *issues* between the two cases; it stayed this case because *V.O.S.* (if affirmed) would grant "*all the relief*

1

Axle request[ed]." ECF 38 at 4 (emphasis added). That is no longer true, as the government admits, and the government's misplaced concerns about judicial economy cannot overcome "the strong public policy favoring expeditious resolution of litigation." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). The Court should dissolve the stay because the reasons why the stay initially issued have themselves dissolved.

## ARGUMENT

The Supreme Court explained long ago that a party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The government asserts that a "continued stay will not result in injury to Axle," ECF 43 at 6, but it does nothing to refute the company's claimed injury to its "profitability, reputation, and operating model." ECF 40 at 3. The government simply asserts, without support, that those harms are not enough, ignoring settled precedent to the contrary. *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("[L]oss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm."). Detroit Axle thus has shown at least "a fair possibility" that the stay will injure it, and the government has not attempted to show that *it* would face "hardship or inequity" if the stay is dissolved. *Landis*, 299 U.S. at 255.

The government's arguments for maintaining the stay are premised on a mischaracterization of this Court's rationale for the stay. The government argues that this Court stayed this case because the arguments here are "intertwined with the arguments presented in *V.O.S.*" ECF 43 at 4. But the Court stayed this case not because of overlapping *arguments* but instead because of what it viewed as completely overlapping *relief* between the two cases:

2

> This court has already granted, and the Federal Circuit subsequently stayed, *all relief Axle requests*. We will not grant redundant, contingent relief through a preliminary injunction here. *Because this court will not provide additional relief*, Axle's motion for a preliminary injunction is **DENIED** and the case . . . is **STAYED** pending a final resolution of [*V.O.S.*].

ECF 38 at 4 (emphases added).

The premise underlying the Court's stay order—that Detroit Axle's requested relief completely overlaps with the relief issued in *V.O.S.*—no longer holds true: The Global De Minimis Order has superseded the prior executive orders; it is not being challenged in *V.O.S.* and is not part of the relief ordered and subsequently stayed in *V.O.S.*; and the government will continue to enforce it regardless of the outcome of that case. Nothing about the stay in *V.O.S.* prevents this Court from enjoining enforcement of the Global De Minimis Order and vacating the agency action implementing that order. Nor would there be anything "redundant" about ordering that relief. ECF 38 at 4. Thus, even if the stay in *V.O.S.* were an impediment to granting Detroit Axle relief from the China-specific de minimis rescission that it previously challenged, it is no obstacle to granting Detroit Axle partial summary judgment with respect to the Global De Minimis Order.[1]

The government also claims that considerations of judicial economy support a continued stay. ECF 43 at 4–6. But "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another [i.e., in *V.O.S.*] settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. And here, the judicial-economy concerns are particularly weak because the government does not even concede that *V.O.S.* will "settle the rule of law" with

---

[1] The government argues that this Court would need to address the legality of the orders at issue in *V.O.S.* because Detroit Axle requests vacatur of a Federal Register notice by U.S. Customs and Border Protection implementing Executive Order 14256. ECF 43 at 4. But this Court did *not* order vacatur of any agency actions in its *V.O.S.* opinion, so there is no overlap between *V.O.S.* and the relief Detroit Axle currently seeks. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383–84 (Ct. Int'l Trade 2025). In any event, this Court need not vacate the CBP notice implementing Executive Order 14256 in order to enjoin enforcement of the later Global De Minimis Order and vacate the agency actions implementing *that* order.

respect to Detroit Axle's suit. *Id.* Rather, it claims merely that the outcome in *V.O.S.* "will be instructive on the interpretation of the President's authority to issue Executive Orders." ECF 43 at 6; *see also id.* at 7 ("[A] Supreme Court decision will . . . perhaps eliminate the questions of law to be addressed by this Court."). And the government is careful not to admit that a decision for the challengers in *V.O.S.* will foreclose its ability to prevail against Detroit Axle—as it believes that the "nullify" or "void" "privileges" language in IEEPA gives it power to rescind the exemption that is independent of its power to impose tariffs. ECF 43 at 5–6 (quoting 50 U.S.C. § 1702(a)(1)(B)); *see* ECF 28 at 22 (explaining that this "other language in the statute separately supports" the government's power to rescind the exemption). Nor would adjudicating Detroit Axle's challenge to the Global De Minimis Order require "the Court to engage in the same analysis twice," as the government argues. ECF 43 at 5. A ruling that the Global De Minimis Order exceeds the President's statutory or constitutional authority or violates the APA would almost certainly apply equally to the China-specific de minimis rescission.

The government asserts that the stay will not be "immoderate in extent" because the pending appeal in the Supreme Court has already been scheduled for argument. ECF 43 at 6 (quoting *Landis*, 299 U.S. at 255–56). But there is no guarantee that the Supreme Court will swiftly issue a decision after hearing the oral argument in the case. And the government seeks to maintain the stay not only pending the Supreme Court's disposition of *V.O.S.*, but also until "the conclusion of *all* appellate proceedings"—which would encompass any remand to the Federal Circuit. ECF 44 at 1 (emphasis added). There is no telling how long that might take—and Detroit Axle will continue suffering serious and undisputed harm all the while. The government's requested stay thus is one of "indefinite duration," which cannot be justified "in the absence of a pressing need." *Landis*, 299 U.S. at 255–56 (holding that a district court's stay pending Supreme Court review of a

separate case was of "indefinite duration" and beyond "any reasonable need"). And the government's plea to "avoid duplicative litigation and conserve judicial resources . . . fall[s] short of the 'pressing need' required." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

Detroit Axle continues to be seriously and irreparably injured by the government's unlawful, global rescission of the de minimis exemption—an executive order not at issue in *V.O.S.* It deserves a decision and relief now.

## CONCLUSION

For the foregoing reasons, the Court should dissolve the stay.

October 2, 2025                                     Respectfully submitted,

/s/ Thomas H. Dupree Jr.

Thomas H. Dupree Jr.
Samantha Sewall
Nick Harper
Connor P. Mui
Luke J.P. Wearden
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
TDupree@gibsondunn.com
SSewall@gibsondunn.com
NHarper@gibsondunn.com
CMui@gibsondunn.com
LWearden@gibsondunn.com

*Counsel for Plaintiff Detroit Axle*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

Pursuant to CIT Standard Chambers Procedure 2(B), I certify that this brief, including headings, footnotes, and quotations (but excluding the table of contents, table of authorities, signature blocks, and this certificate) contains 1,352 words.

/s/ *Thomas H. Dupree Jr.*

*Counsel for Plaintiff Detroit Axle*