## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AXLE OF DEARBORN, INC. d/b/a DETROIT AXLE,<br><br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF COMMERCE; HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*; DEPARTMENT OF THE TREASURY; SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner for U.S. Customs and Border Protection*; and the UNITED STATES,<br><br>*Defendants.* | Case No. 1:25-cv-00091 |

### DECLARATION OF MIKE MUSHEINESH IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, Mike Musheinesh, declare as follows:

1.     I submit this declaration in support of Plaintiff's Renewed Motion for Partial Summary Judgment.

2.     I am over the age of eighteen and submit this declaration from personal knowledge and based on information reviewed or obtained in the course of my responsibilities.

3.     I am the Chief Executive Officer of Plaintiff Detroit Axle, a role that I have held since 2012.  In that capacity, I am responsible for directing company strategy and for oversight of the company's contracting, procurement, and day-to-day operations.  I am familiar with all aspects

1

of Detroit Axle's operations and with the impact that the government actions are having and will have on the company.

4.       Prior to the rescission of the de minimis exemption, Detroit Axle could ship from its Mexico facility product orders valued less than $800 per customer per day directly to U.S. customers, with neither Detroit Axle nor its customers incurring any tariffs. But as a result of the rescission of the de minimis exemption, Detroit Axle's customers would have become individually responsible for paying significant tariffs on every order they placed. Detroit Axle's customers would have been unable to bear the resulting economic, logistical, and administrative burdens, particularly given the significant increase in total effective prices they would face. Thus, as a result of the rescission of the de minimis exemption, Detroit Axle was forced to begin importing products from its Mexico facility itself as the importer of record. That change forced Detroit Axle to begin paying tariffs on shipments it otherwise would have sent to U.S. customers tariff-free under the de minimis exemption.

5.       Since the rescission of the de minimis exemption in May 2025 and through April 15, 2026, Detroit Axle has paid $44,161,236.77 in tariffs on goods imported from its Mexico facility that have been used to fulfill customer orders valued at less than $800 per day—products that Detroit Axle would have shipped tariff-free directly to U.S. customers under the de minimis exemption. Of that sum, $9,285,225.00 was paid as a result of tariffs the government imposed under IEEPA that the Supreme Court recently held unlawful. The remaining $34,876,011.77 was paid for tariffs that were originally levied under other authorities besides IEEPA, but that were imposed on Detroit Axle's otherwise-de-minimis-eligible goods as a result of the government's rescission of the de minimis exemption through IEEPA.

2

Executed on April 23, 2026

Detroit, Michigan

DocuSigned by:

3D89F9182ACF45D...

Mike Musheinesh

3