## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE GARY S. KATZMANN, JUDGE
           THE HONORABLE TIMOTHY M. REIF, JUDGE
           THE HONORABLE JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| AXLE OF DEARBORN, INC. D/B/A DETROIT AXLE, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Court No. 25-cv-00091 |
| DEPARTMENT OF COMMERCE; HOWARD LUTNICK, in his official capacity as Secretary of Commerce; DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES CUSTOMS AND BORDER PROTECTION; PETE R. FLORES, in his official capacity as Acting Commissioner for U.S. Customs and Border Protection; and the UNITED STATES, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S JUNE 26, 2026 LETTER

Defendant, the United States (the Government), respectfully responds to the June 26, 2026 letter filed by plaintiff, Axle of Dearborn, Inc. d/b/a Detroit Axle (Axle).  ECF 71.

Axle's submission does not establish that its products could be imported through the release from manifest process if the *de minimis* privilege's suspension were enjoined.  As Axle's letter acknowledges, the April 2022 email it received followed an incident in which some of its products were seized by U.S. Customs and Border Protection (CBP) at the Southwestern border on the suspicion that those products were regulated by the National Highway Traffic Safety Administration (NHTSA).  ECF 71.  A NHTSA official sent Axle an email on April 22, 2022,

stating that the agency did not regulate the parts concerned, ECF 71-1, but later inter-agency email correspondence shows that NHTSA clarified its position several days later, *see* Ex. A at 2 ("This issue has more moving parts than I thought. . . . Subpart D does apply in this matter. . . . Let me clarify that after reviewing all of the information, 49 CFR 551 does apply to all motor vehicle equipment.").[1] NHTSA has not located email correspondence conveying this clarification to Axle.

Axle's business model utilizing the *de minimis* privilege depended on its customers' ability to import goods into the United States through the streamlined "release from manifest" process. *See* ECF 63 at 14–15. That process is unavailable for goods regulated by Partner Government Agencies (PGAs) like NHTSA. Indeed, the release from manifest entry process does not permit the submission of additional information and documentation required for PGA-regulated products. *Id.* at 14. The email correspondence following NHTSA's apparently erroneous email to Axle shows that NHTSA believed Axle and the manufacturers of Axle's equipment would be required to register with NHTSA. Ex. A. at 2 ("Detroit Axle has provided information that they are registering with NHTSA as an equipment importer. They will be notified that the actual manufacturers of the equipment must register as a manufacturer and will be provided this information."). If CBP allowed importers to use the release from manifest process to import such goods, CBP would have no way to confirm that proper NHTSA

---

[1] Indeed, NHTSA has statutory and regulatory authority over all imported auto parts. *See*, *e.g.*, 49 U.S.C § 30112 (providing, in relevant part, that imported motor vehicle equipment must be compliant with the "applicable motor vehicle safety standard" and must not contain safety defects); 49 C.F.R. § 551.46(a) ("All foreign manufacturers, assemblers, and importers of motor vehicles or motor vehicle equipment . . . must comply with this subpart before offering a motor vehicle or item of motor vehicle equipment for importation into the United States."); and 49 C.F.R. § 551.46(b) ("Unless and until a foreign manufacturer appoints an agent in accordance with the requirements of this subpart, it may not import motor vehicles or motor vehicle equipment into the United States.").

registrations exist for such imports.  When low-value merchandise is entered using "the release from manifest" process, CBP is provided with only limited data concerning the imported merchandise within the shipment.  *See* 19 C.F.R. § 143.23(k).

Moreover, whether a shipment of auto parts may require additional certifications depends upon the specific 10-digit HTSUS code for that entered merchandise and the NHTSA safety standards that govern that particular auto part.  Thus, CBP would need the 10-digit HTSUS code to be reported with the entry filing to determine whether additional NHTSA requirements are applicable to the product.  However, "the release from manifest" process does not require submission of the 10-digit HTSUS code.

The undersigned is available to facilitate discussion between Axle, NHTSA, and CBP if Axle wishes to discuss NHTSA and CBP's position further.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH

Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278
(212) 264-0484
*Attorneys for Defendant*

Dated: July 2, 2026

4